# CHARLESTON.

## ANDERSON et al. v. JARRETT.

(DENT, JUDGE, *absent.*)

Submitted January 27, 1897—Decided April 3, 1897.

1. WITNESS—*Competency of Witness—Death of Party.*

    A written contract dividing land specifies a fence as a line, and on the day of the contract, just after its signing, one of the two parties surveys the lines, fixing a certain fence as the one referred to in the contract. That party cannot, after the death of the other, give evidence denying the fixing of that fence as the line. (p. 250.)

2. EQUITY PLEADING—*Reformation of Deed.*

    A bill *held* sufficiently definite in statement of a mistake in a deed in order to correct it. (p. 247.)

Appeal from Circuit Court, Greenbrier county.

Bill by Mrs. Anderson and others against Joseph Jarrett. Decree for plaintiffs, and defendant appeals.

*Affirmed.*

JOHN W. HARRIS, for appellant.

L. J. WILLIAMS, for appellees.

BRANNON, JUDGE:

Joseph Jarrett and his daughter Virginia Anderson owned jointly a tract of three hundred and fifty acres of land, and Jarrett owned alone an adjoining tract of one hundred and ninety acres. The three hundred and fifty-acre tract was made up of two tracts, one called the Feamster land, the other the Shuck land, and the one hundred and ninety-acre tract was called the Carraway land. Jarrett and Mrs. Anderson entered into a written agreement, by which Jarrett agreed to convey to Mrs. Anderson the Carraway land (one hundred and ninety acres) and the Shuck land (part of the three hundred and fifty acres), and she agreed to convey to Jarrett the remainder of the three hundred and fifty acres, the Feamster land. Before the execution of deeds under this agreement, Mrs. Anderson died, leaving infant children, and Jarrett brought a suit against them, to execute the agreement, in which was a decree that it be executed by the execution by a commissioner of a deed to Jarrett in behalf of Mrs. Anderson's heirs for the land he was to get under it, and one to the heirs for the land which Mrs. Anderson was to get under it, and authorizing the commissioner to have a survey made, and to make the deeds conformably to it. Such survey was made, and the deeds were made according to it. Later the heirs of Mrs. Anderson brought this suit, alleging a mistake in some of the lines of said deeds, whereby Jarrett got six or seven acres of land belonging to Mrs. Anderson under the agreement, and praying that said deed be reformed by the correction of such mistake; and, the court having decreed such reformation, Jarrett appeals.

It is said in argument, in support of the appeal, that the demurrer to the bill ought to have been sustained, because it does not set forth with sufficient definiteness the al-

leged mistake sought to be corrected; that it does not tell wherein the bounds in the deeds fail to conform to the contract; that while it charges that Jarrett and Mrs. Anderson went upon the land when the agreement was made, and marked off the lines, the bill does not say in what respect they differ from those contained in the deeds. I can not concur in this contention. The bill alleges that the metes and bounds of the deed do not conform to those of the agreement of partition between Jarrett and his daughter; that the agreement provides the manner in which the Shuck land should be run off to Mrs. Anderson, by saying that, "in running off the Shuck land, the line shall commence at a corner on the old Vina plat, at or near where the old sawmill used to stand, and run said line and continue the same until it reaches the old fence between the Feamster land and Shuck land, and then, with said fence, to Hannah or Hedrick place"; and charges that, at the time of making the agreement, Jarrett and Mrs. Anderson went upon the land, and Jarrett marked off the lines as above mentioned in the contract; that the metes and bounds in the deeds pretend to follow the lines as agreed upon, but in reality do not; that the discrepancy exists between the lines of the contract and certain lines of the deed, describing definitely, by magnetic calls and distances and otherwise, those particular lines specified as erroneous; and then charges that there are near the same place two old fences, and that the metes and bounds given in the deeds pretend to follow one of them, but that that is not the fence dividing the Shuck land from the Feamster land, nor the one agreed upon by Mrs. Anderson and Jarrett, thus plainly meaning to say it is the other fence; and then charges that the land between the lines agreed upon in the contract and those of the deeds embraces six or seven acres, meaning that the line, if run by the proper fence,—not the one followed by the deeds, but the one which they should follow,—embraces that quantity, plainly contending that the line should follow the one rather than the other of these fences, and thus give Mrs. Anderson's children that quantity of land lying between two lines following the two fences conveyed by the deed to Jarrett. This description of the land claimed is said to be so indefinite as not to support a bill for specific perform-

ance, under *Matthews* v. *Jarrett*, 20 W. Va. 415, or eject-
ment under *Postlewaite* v. *Wise*, 17 W. Va. 1. I incline
to think it would support the former, if not the latter; but
I do not think that either is a fair test. It is not so much
a description of the land claimed, as in those proceedings,
but a correction of the mere lines of the deeds. All that
can be demanded is that the bill tell what is the mistake.
Does it not do this? It tells just what particular lines are
wrong. It does this, certainly. Does it say how or why
wrong? I think so, because it says that a line must start
at a corner on the Vina plat at the old sawmill site, and
go to the old fence between the Feamster land and Shuck
land, and then follow that fence to the Hannah or Hedrick
place, where it is to be closed with other lines of the deed
not complained of. Does not the bill point out with
reasonable certainty the wrong lines and the right ones?
It further says the right lines were marked at the date of
the agreement by Jarrett. Data for the ascertainment of
the right lines are given, and all that is needed is oral
evidence to find this old fence along which Jarrett marked
the line, and, by the compass and chain, ascertain calls
and distances to go into a reformed deed. You have right
to use oral evidence to apply this bill, like a deed, physic-
ally to the ground. The bill gives the wrong lines, clearly.
It says Jarrett and Mrs. Anderson fixed the right ones.
Identify these lines they made by oral evidence, as the
law allows, and they are the ones we seek to go in the
deed, as the acts of parties under an instrument speak its
true meaning and import. *Caperton's Adm'rs* v. *Caper-
ton's Heirs*, 36 W. Va. 479, (15 S. E. 257); *Shrewsbury* v.
*Tufts*, 41 W. Va. 212, (23 S. E. 692). This is not to con-
tradict or alter a writing, but only to apply it to the sub-
ject-matter it relates to. 1 Greenl. Ev. §§ 287, 288, 301.
So, I think there was no ground for demurrer.

Adverting now to the aspect of the case as presented by
the evidence, as the case rests on a very considerable
quanty of oral evidence, and considerably conflicting, I
do not see why we can be expected to reverse the find-
ings of fact made by the chancellor below. It cannot
be requisite, or even proper, that I detail evidence,
or even all the facts, as they elucidate no principle
of law, and would be no precedent for future cases.

It suffices to say that three witnesses show that, after the said agreement on the same day, Jarrett and those three persons went with compass and chain on the ground, and ran the line from the corner on the Vina plat, near the site of the sawmill, to an old fence down under a hill, and thence along it, and this at Jarrett's direction, and thus adopted that particular old fence as the particular fixed line by which the Shuck land was to be assigned to Mrs. Anderson under that agreement; and that there was another old fence on top of the hill; and that when the surveyor went on the ground, under the decree in the suit of Jarrett, to survey preparatory to the execution of deeds under the decree (Mrs. Anderson then dead), the old fence under the hill fixed by Jarrett at the date of the agreement was, either purposely or by mistake, ignored, and the line of the fence on top of the hill fixed as the line, and the deeds made by it; and that Jarrett has fenced on it, and thus included land belonging to the children of Mrs. Anderson. He inconsistently adopted one of the fences in part; the other in part. These facts are clearly shown by the witnesses present at the first survey. There is no showing to the contrary, save by Jarrett, and this justifies the decree, even if Jarrett be competent as a witness. He denies that the fence under the hill was fixed as a line. Mrs. Anderson was not on the ground when this line was fixed, but she had just before taken active part in the negotiation of the partition; and this was the fixing of lines under the agreement, a part of the *res gestæ*, we may say, of its execution, tending to show what the real transaction was, what line had been agreed upon; and that is the test of admissibility,—*i. e.* does the thing said or done show what the real transaction between the parties was? And, if so, it is not admissible. *Paxton* v. *Paxton*, 38 W. Va. 619 (18 S. E. 765). I have just cited authority to show that acts of the parties under an instrument interpret it,— show what the contract was. Why may we not say that it was agreed between Mrs. Anderson and her father that the old fence under the hill should be the one? If living, perhaps she would say so, and so show that he did fix that fence as the line, and negative his denial. He cannot say that he fixed the other fence as the line. I think our cases will show this. *Robinson* v. *James*, 29 W. Va. 224, (11 S.

E. 920); *Owens* v. *Owens*, 14 W. Va. 95; *Anderson* v. *Cranmer*, 11 W. Va. 576. But his evidence on this is overborne by that of the three witnesés. He says he built a fence in the lifetime of Mrs. Anderson on the line claimed by him, thus showing her acquiescence. He could not be allowed to say she agreed to that line, and he can not do the same thing indirectly. The answer sets up no mistake of Jarrett in locating the line on the day of the contract, and, though this is argued in brief of appellees' counsel, it is not by counsel for appellant, and it is not necessary to pursue it. He does not allege mistake in his evidence, but denies fixing that fence for a line.

It is urged in the petition for the appeal that the line claimed by the Anderson children is not the true, original line separating the Shuck from the Feamster tract, and the contract says she gets the Shuck land. I answer that, if its locality was uncertain, the agreement was designed to make it certain; and, if it varies from it, such was the intent of the parties, because they made the contract specify that old fence as the line, thus intending change; and thus we may say that Jarrett, on the day of the contract, in fixing this line, was not finding the original Shuck line, but originating and fixing a line agreed on between him and Mrs. Anderson, as specially agreed on. The statement in the agreement that Mrs. Anderson was to get the Shuck land was a general description of the land, not definitive of this line when a special clause fixed this particular line or description. Where there are inconsistent calls,—one general, the other specific,—the specific prevails. 2 Am. & Eng. Enc. Law, 498; 1 Greenl. Ev. § 301. The short of the case is that the line claimed by the plaintiffs is that one located by Jarrett himself, pursuant to and in immediate execution of the agreement, no doubt along just that fence well known and well understood by him and his daughter.

It cannot be said that the adjudication in the first suit is conclusive. It did not specify the line, but (likely improperly) left it to be ascertained by after-surveying, not confirmed by court, and the line was fixed by it and the commissioner's deed, and not adjudicated as true. This point is not urged; hardly claimed as good. The decided

weight and probability of the case as to the facts favor the decree, and we therefore affirm it.

*Affirmed.*